James NEIBERGER, Danford Eldridge, Paul Gardner, and Terence Jacobs, Plaintiffs,

v.

Robert HAWKINS, individually and in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo; Garry Toerber, individually and in his official capacity as Associate Manager for the Office of Direct Services of the Department of Human Services; Colorado Department of Human Services; and Colorado Mental Health Institute at Pueblo, Defendants.

No. Civ.A. 99–B–1120.

United States District Court, D. Colorado.

Nov. 12, 1999.

Slyvia V. Kirk, Englewood, CO, David H. Miller, Miller Lane Killmer & Greisen LLP, Denver, CO, Kathleen Mullen, Law Office of Kathleen Mullen, P.C., Denver, CO, for plaintiffs.

Cathy Havener Greer, Pamela Skelton, Ritsema & Lyon, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action brought by patients of the Forensic Institute at the Colorado Mental Health Institute at Pueblo (the "CMHI–P"), Defendants, Robert Hawkins, Garry Toerber, the Colorado Department of Human Services (the "DHS"), and the CMHI–P (collectively "Defendants"), move to dismiss Plaintiffs' second amended complaint. Plaintiffs, James Neiberger, Danford Eldridge, Paul Gardner, and Terence Jacobs (collectively "Plaintiffs"), oppose this motion. The issues are adequately briefed and orally argued. For the reasons set forth below, I grant in part and deny in part Defendants' motion to dismiss. I hold the motion in abeyance as to Plaintiffs' Americans with Disabilities Act ("ADA") claim. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1443, original federal question jurisdiction and removal.

## I.

Plaintiffs are patients in the CMHI–P pursuant to respective adjudications of not guilty by reason of insanity. C.R.S. § 16–8–105. They bring this action alleging a combination of hostile conditions and policies that prevent them from obtaining appropriate medical and psychiatric care. Defendant Robert Hawkins is the Superintendent of the CMHI–P. Plaintiffs allege that Mr. Hawkins, in his official capacity, is responsible for ensuring that the CMHI–P provides care and treatment consistent with statutory and constitutional standards. Plaintiffs further allege that Mr. Hawkins was personally aware of the inadequate care provided to patients at the CMHI–P. Defendant Garry Toerber is the Associate Manager for the Office of Direct Services of the DHS and is the Director of the Pueblo state psychiatric hospital. As the Director, Mr. Toerber is allegedly responsible for overseeing all aspects of the operations and is thus allegedly responsible for ensuring that patients at the CMHI–P receive proper medical and psychiatric treatment. Plaintiffs also allege that Mr. Toerber was personally aware of the inadequate conditions at the CMHI–P. The DHS is the state agency responsible for the administration of the state's psychiatric hospitals, including the CMHI–P.

Plaintiffs brought this action in the Colorado District Court for the City and County of Denver. Defendants removed to this Court based on federal question jurisdiction. 28 U.S.C. §§ 1331, 1441. Plaintiffs assert the following claims for relief:

(1) Violation of Colorado's Care and Treatment of the Mentally Ill Act, C.R.S. § 27–10–101;

(2) Violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;

(3) Violation of the ADA; and

(4) Negligence.

## II.

Defendants do not specify the provisions of Rule 12 under which they move to dismiss Plaintiffs' claims. However, in light of their arguments, the only applicable provisions are Rules 12(b)(1) and 12(b)(6).

A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See King v. United States*, 53 F.Supp.2d 1056, 1064 (D.Colo. 1999); *see also Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo.1993) (immunity under the Colorado Governmental Immunity Act is a jurisdictional issue). Under Rule 12(b)(1), I have wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing in making appropriate factual findings on jurisdictional issues. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.1987). In deciding whether sovereign immunity has been waived, I may receive any competent evidence pertaining to the motion, including evidence outside the pleadings, without converting it into a summary judgment motion. *See Trinity Broadcasting*, 848 P.2d at 924–25. Further, "[a]ny factual dispute upon which the existence of jurisdiction may turn is for the court alone, and not a jury to determine." *Id.* The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). Therefore, Plaintiffs have the burden of showing that Defendants are not immune from suit. *See Trinity*, 848 P.2d at 925.

For purposes of considering Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), I have not considered any evidence outside of the pleadings. *See Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). In evaluating a 12(b)(6) motion to dismiss,

> all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.... "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ... "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

*Id.* (internal citations omitted).

## III.

### A. Violation of Colorado's Care and Treatment of the Mentally Ill Act.

■ Plaintiffs' first claim is pursuant to the Care and Treatment of the Mentally Ill Act. C.R.S. § 27–10–101, et seq. ("Treatment Act"). In their second amended complaint, Plaintiffs allege that Defendants have substantially violated Plaintiffs' rights secured by the Treatment Act by, among other things: failing to provide individualized medical and psychological evaluations and treatment plans; failing to progress Plaintiffs to lesser-restrictive environments; failing to inform Plaintiffs of the risks and benefits of psychotropic medication; failing to follow required procedural safeguards for the administration of forced medication without consent; failing to provide Plaintiffs with a safe and therapeutic environment; retaliating against Plaintiffs' assertions of their rights; interfering with Plaintiffs' mail, right to counsel, and visitation; subjecting Plaintiffs to belittling and abusive treatments; and de-

priving Plaintiffs of basic human needs. (Complaint, ¶ 75). As a result of these alleged actions and omissions, Plaintiffs contend they have suffered immediate and irreparable injuries. Plaintiffs seek an injunction and compensatory damages.

Defendants move to dismiss this claim on several grounds. First, Defendants submit that I should decline jurisdiction over this claim due to the Colorado courts' continuing jurisdiction. Second, Defendants argue that Plaintiffs are not entitled to the Treatment Act's protections. Finally, in the alternative, Defendants move to dismiss Plaintiffs' claim to the extent it seeks damages.

### 1. Exercise of Jurisdiction

Plaintiffs were committed to the CMHI–P pursuant to Colorado criminal statutes. *See, e.g.,* C.R.S. § 16–8–105(4) ("If the trier of fact finds the defendant not guilty by reason of insanity, the court shall commit the defendant to the custody of the department of human services until such time as he is found eligible for release . . . ."). The Colorado Supreme Court has held that committing courts retain jurisdiction over claims by persons adjudicated "not guilty by reason of insanity" ("NGRI patients"):

> We are satisfied that Colorado's statutory scheme for the automatic commitment of criminal defendants adjudicated not guilty by reason of insanity manifests a clear legislative intent to vest the committing court with subject matter jurisdiction to resolve questions relating to the treatment needs of the committed defendant and that such jurisdiction continues until such time as the defendant is unconditionally released from the order of commitment.

*People v. Gilliland,* 769 P.2d 477, 479–480 (Colo.1989) (en banc).

Because committing courts retain jurisdiction over questions relating to the treatment needs of NGRI patients, Defendants urge that I decline subject matter jurisdiction over this claim because the state court is the more appropriate forum. (Motion to Dismiss, p. 12). Defendants do not claim, however, that this Court lacks subject matter jurisdiction over this claim. Indeed, Defendants chose to remove all claims from state court here based on original federal question jurisdiction over Plaintiffs' ADA and § 1983 claims. In the Notice of Removal, Defendants concede, as they must, that state law claims are no impediment to removal, citing 28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein").

However, Defendants now suggest that I abstain from Plaintiffs' first claim for relief under Colorado's Treatment Act because the state forum is more appropriate. In *Gilliland,* the Colorado Supreme Court enforced continuing state jurisdiction in a suit involving a single defendant forced to take medication. Unlike *Gilliland,* this case is a putative class action raising questions of the treatment of the entire CMHI–P patient population. With regard to the named Plaintiffs alone, three different courts committed them to the care of the CMHI–P. (Plaintiffs' Response to Motion to Dismiss, p. 12). The proposed class consists of more than 250 additional patients. This case does not involve retaining jurisdiction over the treatment of a single patient, but is an independent action brought by numerous Plaintiffs attacking Defendants' treatment of mentally ill persons committed to the CMHI–P. Plaintiffs should not be forced to bring separate causes of action in the various committing courts. Further, in addition to state law claims, this case involves issues of federal law. Defendants' proposal that I decline jurisdiction would unnecessarily foster piecemeal litigation.

Defendants also cite, without discussion, the *Burford* and *Younger* abstention rules

in support of their argument that I abstain from hearing this claim. *See Taylor v. Jaquez,* 126 F.3d 1294, 1297 (10th Cir. 1997) (*"Younger ...* commands a federal court to abstain from exercising jurisdiction when three conditions have been established. First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."); *Walker Operating Corp. v. F.E.R.C.,* 874 F.2d 1320, 1330 (10th Cir.1989) (*"Burford-*type abstention is deference by a federal court in order to avoid needlessly interfering in state activities."). Abstention must be employed sparingly:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." "(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it."

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal citations omitted). Defendants have failed to persuade me to abstain from hearing this claim. They identify no overriding state interests or matters which traditionally look to state law for resolution. Further, Defendants do not claim that I would needlessly be interfering with state activi-

ties by hearing this claim. Finally, Plaintiffs argue, and Defendants do not contest, that this action, involving a potential Plaintiff class, does not involve the same parties or issues as cases under the continuing jurisdiction of numerous state committing courts.

Exercising jurisdiction over Plaintiffs' claim under the Treatment Act is an appropriate exercise of supplemental jurisdiction. 28 U.S.C. § 1367(a). Defendants' request for abstention is particularly inappropriate where, as here, Defendants chose to remove this case to federal court in the first instance. Furthermore, resolution of this case will require application of both federal and state law. I exercise my discretion to retain original and supplemental jurisdiction over Plaintiffs' claims, and therefore, I deny Defendants' motion to dismiss Plaintiffs' Treatment Act claim.

### 2. Plaintiffs' Entitlement to Protection under the Treatment Act

■ Defendants next contend that Plaintiffs, as NGRI patients, are not covered by the Treatment Act. In their second amended complaint, Plaintiffs assert that, as patients committed to a mental health facility, they have rights under the Treatment Act. C.R.S. § 27–10–116(1)(a). (Second Amended Complaint, ¶ 44). This statute states, in relevant part:

> Any person receiving evaluation or treatment under any of the provisions of this article is entitled to medical and psychiatric care and treatment ... suited to meet his individual needs, delivered in such a way as to keep him in the least restrictive environment, and delivered in such a way as to include the opportunity for participation of family members in his program of care and treatment when appropriate, all subject to available appropriations. Nothing in this paragraph (a) shall create any right with respect to any person other than the person receiving evaluation, care, or treatment....

Defendants contend that under this provision, Plaintiffs are entitled to the Treatment Act's protections only if they were *committed* under its provisions. I do not read this requirement into the above language.

Defendants argue that there are significant differences between commitment under the criminal process and the civil process and, therefore, different standards of care apply to these patients. In support, Defendants cite Colorado case law finding that differences between criminal and civil commitment standards and procedures for commitment and release do not create equal protection violations. *See People v. Chavez*, 629 P.2d 1040, 1045 (Colo.1981) ("We also conclude that the differences in the commitment procedures and standards of release for criminal and civil commitments do not violate equal protection of the laws."). In *Chavez*, the Colorado Supreme Court found no equal protection violation in the different procedures employed in civilly committing persons under the Treatment Act as opposed to persons adjudicated criminally insane. The *Chavez* Court reasoned: "The assertion of the insanity defense and the judicial determination implicit in the insanity adjudication that the accused engaged in criminal conduct as a result of mental disease or a questionable state of legal sanity place the legally insane defendant in a special class of persons posing an imminent danger to public safety if immediately released from detention." *Chavez*, 629 P.2d at 1053. The Court also noted and approved the differences in standards for release. *See id.* Similarly, the United States District Court for the District of Colorado held:

> Criminal committees and potential involuntary civil committees are not similarly situated groups. Although the state ultimately seeks to care for and treat psychiatrically both groups after commitment to a state facility, petitioners ignore important differences that permit different statutory treatment. A criminal offense has occurred, and the defendant has confessed that he committed the offense through his voluntary plea of not guilty by reason of insanity. A court has determined that probable cause exists to believe that the defendant committed the act, and the defendant has been found not guilty by reason of insanity at a trial of the sanity issue. These differences dramatically distinguish the involuntary civil committee and make an equal protection comparison inappropriate.

*Glatz v. Kort*, 650 F.Supp. 191, 199 (D.Colo.1984), aff'd. by *Glatz v. Kort*, 807 F.2d 1514 (10th Cir.1986).

 However, Plaintiffs are not challenging unequal procedures governing their commitment and release. The issue here is, once committed, should the standards of care in the Treatment Act apply both to civilly and criminally committed persons. Colorado case law does not directly address this issue. I conclude that the Treatment Act should apply to both types of committees.

 I look first to principles of statutory construction. In construing statutory provisions, [a court] should give effect to the intent of the legislature. [A court] must look first to the statutory language itself, giving words and phrases their commonly accepted meaning. Where the language of a statute is plain and the meaning is clear, [a court] need not resort to interpretive rules of statutory construction, but must apply the statute as written.

*Univex Internat'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo.1996) (internal citations omitted). Nothing in the express language of the Treatment Act suggests that its application is limited to those civilly committed or that criminally and civilly committed persons are treated under different standards of care. The stated purposes of the Treatment Act include: "To secure *for each person who may be mentally ill such care and treatment as will be suited to the needs of the person* and to insure that such care and treatment are skillfully and humanely ad-

ministered with full respect for the person's dignity and personal integrity." C.R.S. § 27–10–101(1)(a) (emphasis added). Also, C.R.S. § 27–10–116(1)(a) states that the standards apply to "any person receiving evaluation or treatment under any of the provisions of this article." A further provision specifically contemplates treatment for NGRI patients, C.R.S. § 27–10–111(4.5), indicative of legislative intent that the Treatment Act applies to NGRI patients. *See Goebel v. Colorado Dep't of Institutions,* 830 P.2d 1036, 1040 (Colo. 1992) ("The words 'any person' and 'any of the provisions' manifest the legislature's intent to provide mental health services on a broad basis."). Notably, the NGRI criminal commitment statute, C.R.S. § 16–8–101, et. seq., provides no standards for care and treatment, but contains procedural guidelines only. It would be unreasonable to conclude that the Colorado General Assembly intended to provide no standards of care for NGRI patients.

The Treatment Act broadly defines "mentally ill person" as "*a person* with a substantial disorder of the cognitive, volitional, or emotional processes that grossly impairs judgment or capacity to recognize reality or to control behavior." C.R.S. § 27–10–102(7) (emphasis added). In interpreting this provision, Colorado courts have held that, "the apparent legislative intent was to provide services *to all mentally ill persons as defined.*" *Goebel v. Colorado Dep't of Institutions,* 830 P.2d 1036, 1042 (Colo.1992) (determining that Treatment Act covers involuntary and voluntary committees) (emphasis added). This language does not exclude NGRI persons.

The statutes' structure itself indicates that criminally committed patients are entitled to the protections of the Treatment Act. Title 27 is entitled "Institutions." There are five general sections within this title. The first is "Department of Human Services." C.R.S. § 27–1–104(a) lists the CMHI–P as an institution supervised, managed, and controlled by the DHS. The second, "Mental Illness and Defects," contains the Treatment Act. This second section also lists the included institutions and has an article thirteen specifically creating the CMHI–P. On the other hand, Title 16 is entitled "Criminal Proceedings" and includes the code of criminal procedure. This contains the NGRI procedural provisions regarding insanity, incompetence, commitment, and release. C.R.S. § 16–8–101, et seq. However, Title 16 provides no standards for the operation of the facilities or the care of NGRI patients.

In addition to the above, this Court has held that criminal committees are to be afforded the same level of medical care provided to civil committees. *See Romero v. Schauer,* 386 F.Supp. 851, 860–861 (D.Colo.1974) (Arraj, J.) ("the State of Colorado by statute explicitly guarantees a right to psychiatric treatment to all persons committed to the state hospital, whether the commitment is the result of a civil proceeding or of a verdict of not guilty by reason of insanity in a criminal case."). I agree that criminally committed patients are entitled to the same degree of care as civilly committed patients.

Defendants acknowledge that civilly committed patients receive care pursuant to the Treatment Act. (Motion to Dismiss, p. 8). Therefore, criminally committed patients are due the same level of protection. *See, e.g., Gilliland,* 769 P.2d at 483 ("A person committed to the Department of Institutions for care and treatment as the result of an insanity adjudication is entitled to the same general quality of treatment available to a civilly committed patient."); *Kort v. Carlson,* 723 P.2d 143, 148 (Colo.1986) ("Construing the criminal commitment provisions to establish a right to treatment is consistent with the statutory language and its purpose of restoring persons criminally committed to competency if possible. Furthermore, a right to treatment for a criminally committed person is consistent with the broad purpose of the civil commitment statutes to 'secure for each person who may be mentally ill such

care and treatment as will be suited to the needs of the person....' Finally, recognition that the involuntarily committed have a statutory right to treatment is in accord with the widely accepted view that the right has a constitutional foundation."); *Chavez,* 629 P.2d at 1048 (Court notes that the statutory scheme governing criminal committees "contemplates that the defendant's present need for care and treatment ... will be addressed.").

Defendants contend that this established Colorado law stands for the narrow proposition that although NGRI committees may be entitled to the same *general* quality of treatment as others committed to the state's care, the Treatment Act does not apply to them. (Defendants Reply in support of Motion to Dismiss, p. 6). I disagree. I hold that the Treatment Act and its general standards of care apply to persons adjudicated and committed as NGRI. Thus, Plaintiffs, as NGRI patients, assert a cognizable claim for violation of the Treatment Act.

### 3. Plaintiffs' Entitlement to Damages under the Treatment Act

■ In their claim for violation of the Treatment Act, Plaintiffs seek compensatory damages for alleged "physical injuries, pain and suffering, severe emotional distress, unlawful deprivation of liberty, degradation and deprivation of the quality of their lives." (Second Amended Complaint, ¶ 78). However, Plaintiffs do not possess a private right of actions for damages under the Treatment Act.

*Goebel v. Colorado Dep't of Institutions,* 764 P.2d 785 (Colo.1988) (en banc), involved a class action on behalf of mentally ill persons residing in Denver, challenging the adequacy of mental health care. Those plaintiffs sought declaratory and injunctive relief as well as damages. The trial court dismissed all of the claims for relief. *See id.* at 787. In dismissing the claim for damages the trial court stated that, "the Care and Treatment Act 'provides neither an express nor an implied

cause of action for damages' ". *Id.* at 792 (internal citations omitted). Upon review of this dismissal, the Colorado Supreme Court stated, in relevant part:

> The trial court dismissed this claim, concluding that the Care and Treatment Act "provides neither an express nor an implied cause of action for damages." *We agree with the court's conclusion that the legislature did not intend to provide for enforcement by individual claims for damages.*

*Id.* at 799, fn. 16 (emphasis added).

■ Despite Plaintiffs' arguments to the contrary, I conclude that the Colorado Supreme Court's pronouncement is binding. The *Goebel* Court squarely determined that a claim for damages is not allowed under the Treatment Act. Therefore, I grant Defendants' motion to dismiss Plaintiffs' Treatment Act claim, but only to the extent that it requests compensatory damages.

### B. Due Process Claim pursuant to 42 U.S.C. § 1983

■ In their second claim for relief, Plaintiffs allege a 42 U.S.C. § 1983 Fourteenth Amendment Due Process violation against the DHS, the CMHI–P, Robert Hawkins (both individually and in his official capacity), and Garry Toerber (individually and in his official capacity). (Second Amended Complaint, ¶¶ 79–89). Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

"Section 1983 does not create substantive rights. Rather it provides a recovery

mechanism for deprivation of a federal right. To establish a cause of action under section 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a *person* acting under color of state law." *Watson v. City of Kansas*, 857 F.2d 690, 694 (10th Cir.1988) (emphasis added) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

■ In their response to Defendants' motion to dismiss Plaintiffs admit that,

Defendants correctly point out that a state is not a "person" for purposes of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, Plaintiffs concede that they cannot sue the state for any relief or the official capacity Defendants for monetary relief under section 1983.

Therefore, I grant, as confessed, Defendants' motion to dismiss the § 1983 claim against the DHS, the CMHI–P, and the official capacity Defendants to the extent that monetary relief is requested. Mr. Hawkins and Mr. Toerber are appropriate Defendants in their official capacity under § 1983 for prospective, injunctive relief only. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304, fn. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' "). Finally, Mr. Hawkins and Mr. Toerber, as individuals, are "persons" subject to suit under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Defendants challenge the § 1983 Due Process claim against the remaining Defendants. First, they argue that the claims are barred against the individual Defendants in their official capacities by the doctrine of Eleventh Amendment sovereign immunity. Second, they contend that the individual Defendants, sued in their individual capacities, are entitled to qualified immunity.

### 1. Sovereign Immunity

■ The Eleventh Amendment provides for the sovereign immunity of a state or state actors sued in federal court. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir.1998). This immunity can bar any form of relief that a citizen might request in a suit against a state, even a suit solely for prospective injunctive relief when brought against a state or state agency. *See id.* (citing *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)). Further, as Plaintiffs concede, "when a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the 'real party in interest' is the state, and the suit is barred by the Eleventh Amendment." *Id.*

■ There are three exceptions to the doctrine of sovereign immunity: (1) "A state may waive its Eleventh Amendment immunity by consenting to be sued, but only in the clearest and most unmistakable terms," (2) "Congress may abrogate the states' Eleventh Amendment immunity, but again, only by using the clearest and most unmistakable terms, and only when Congress is exercising a power granted to it by a constitutional amendment post-dating the Eleventh Amendment, i.e., principally section 5 of the Fourteenth Amendment," and (3) the *Ex parte Young* exception. *Id.* at 1188. Under *Ex parte Young*, in a suit against a state official, "when a party seeks only prospective equitable relief—as opposed to any form of money damages or other legal relief—then the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States." *Id.* ("when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court.").

■ As noted above, a state may waive its Eleventh Amendment immunity by con-

senting to suit, but only in the clearest and most unmistakable terms. *See ANR Pipeline,* 150 F.3d at 1187 (10th Cir.1998). Plaintiffs originally filed this action in state court. Defendants then removed to federal court. The Tenth Circuit has held that the Eleventh Amendment defense can be waived when a Defendant removes a case from state to federal court. *See Sutton,* 173 F.3d at 1234 (citing *Gallagher v. Continental Ins. Co.,* 502 F.2d 827, 830 (10th Cir.1974)). "[A]n unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum." *Id.* Here, like in *Sutton,* the invocation of federal court jurisdiction was by Defendants' own counsel. However, I cannot conclude that this removal is an unequivocal waiver of sovereign immunity. In their Notice of Removal, Defendants expressly provide that:

> By removal, Defendants do not waive any right to assert, or the protection of, any available constitutional, statutory, common law, or other provision that does, might, or could limit the Court's jurisdiction of the allegations of Plaintiffs' Complaint or any proposed amendment thereto, including allegations of entitlement to relief thereunder.

This express reservation is contrary to an unequivocal waiver of Defendants' sovereign immunity defense. Furthermore, in *Sutton,* where the Tenth Circuit found that removal constituted waiver, the Defendant failed to immediately raise its Eleventh Amendment defense. *See Sutton,* 173 F.3d at 1235 fn. 8. And significantly, since the Tenth Circuit's decision in *Sutton,* the Supreme Court expressed disfavor with implied waiver. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* — U.S. —, —, 119 S.Ct. 2199, 2204, 144 L.Ed.2d 575 (1999). For these reasons, Defendants' removal was not an "extraordinarily effective waiver" of Eleventh Amendment sovereign immunity. *See Richins v. Industrial Constr., Inc.,* 502 F.2d 1051, 1056 (10th Cir.1974).

Plaintiffs also maintain that the action against the official capacity Defendants requesting only future injunctive relief is squarely within the exception provided by *Ex parte Young.* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also ANR Pipeline,* 150 F.3d at 1188 ("when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court."). However, the Tenth Circuit has outlined the following exceptions to the *Ex parte Young* doctrine:

> First, federal courts have no jurisdiction to entertain a suit that seeks to require the state official to comply with state law—only allegations of violations of federal law are sufficient to come within the *Ex parte Young* rule.... Second, the doctrine will not go so far as to allow federal jurisdiction over a suit that seeks to redress past wrongs—only ongoing violations are covered.... Third, the doctrine does not allow a federal court to declare past state conduct unconstitutional when the only purpose for such a declaratory judgment would be its res judicata effect in a subsequent state-court proceeding; such a declaration would have the effect of adjudicating the liability issues in a damages action against the state even though a direct federal suit for damages would be barred by the Eleventh Amendment. And fourth, although the doctrine will allow injunctive relief that might have a substantial ancillary effect on a state treasury, it does not allow an award for monetary relief that is the practical equivalent of money damages, even if this relief is characterized as equitable.

*Id.* at 1188–1189 (internal citations omitted).

Defendants argue that Plaintiffs seek recourse for alleged past violations contrary to *Ex parte Young. See id.* Plaintiffs concede, however, that they seek relief against the individual Defendants in

their official capacities "for prospective, injunctive relief" only. (Response, p. 15). Therefore, any allegations in their complaint seeking recourse for alleged past violations is now moot or withdrawn. This comports with Tenth Circuit law. *Id.* at 1191 ("The *Ex parte Young* doctrine applies only to continuing wrongs."). No other exception to the *Ex parte Young* doctrine applies here.

Finally, Defendants argue that federal jurisdiction should not be exercised because of the "improper collateral attack attempted by Plaintiffs on the on-going jurisdiction of Plaintiffs in state criminal courts." (Motion to Dismiss, p. 17). Because state courts retain continuing jurisdiction over NGRI patients, *Jacobs,* 869 P.2d at 214, Defendants argue that the *Ex parte Young* exception should not apply because core state sovereign interests are implicated. *See ANR Pipeline,* 150 F.3d at 1193 ("we must not extend the *Ex parte Young* doctrine to allow a suit for prospective equitable relief when that relief would be just as intrusive, if not more so, into core aspects of a state's sovereignty.") (citing *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). Defendants argue that Colorado's interests in its police powers and the integrity of its criminal law system is paramount, and interests of sovereignty should bar *Ex parte Young.*

*ANR Pipeline* declined to extend the *Ex parte Young* doctrine to the realm of state taxes because the Tenth Circuit concluded that this implicated a core aspect of a state's sovereign immunity. In so holding, the Tenth Circuit noted:

> Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in its tax collection system. . . . As the Supreme Court explained in *Rosewell,* the Tax Injunction Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell,* 450 U.S. at 522, 101

S.Ct. 1221. The statute had its roots in Congress' recognition of "the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). We do not doubt, therefore, that a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty. Indeed, where it is possible to imagine a state government continuing to maintain its sovereignty despite the lack of any ownership of land, cf. *Coeur d'Alene Tribe,* 117 S.Ct. at 2041, it is impossible to imagine that a state government could continue to exist without the power to tax.

*Id.* at 1193. The Court concluded that the plaintiffs' request that Kansas "recertify" its tax assessment of the plaintiffs' personal property and rewrite its tax laws, was too intrusive into Kansas' sovereignty. Therefore, the Court declined to apply the *Ex parte Young* exception and held that the claim was barred by Eleventh Amendment immunity and the proper forum was state court. *See id.*

In this case, no state property interests are implicated. Indeed, the Tenth Circuit has interpreted the *Coeur d'Alene* limit, outlined in *ANR Pipeline,* as only applying to cases involving property interests. The Tenth Circuit held "that if the relief requested involved the adjudication of property interests (like a quiet title action) that 'implicate[ ] special sovereignty interests' and is coupled with far-reaching and invasive relief, the *Ex parte Young* doctrine is inapplicable, and the state should be allowed to respond to the claims against it in its own courts." *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior,* 160 F.3d 602 (10th Cir.1998); *see, also Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (allowing suit to proceed in federal court to address prevention of unconstitutional state conduct, but the case did not substantially involve state property interests); *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477 (10th Cir.1995) (allowing federal jurisdiction, but

involved a request to enjoin a state's continuing violation of provisions of a federal environmental law and did not principally involve a state property interest); *Johns v. Stewart*, 57 F.3d 1544 (10th Cir.1995) (Eleventh Amendment does not bar the portion of the plaintiffs' complaint seeking prospective relief preventing an ongoing violation of federal law, but no state property interest was implicated. Although the suit required the state to distribute monies under the Social Security Act, the state did not have a property interest in the benefit payments.); *Elephant Butte*, 160 F.3d at 609 ("state property interests impact whether the court chooses to exercise jurisdiction over state officials").

I conclude that the effect of Plaintiffs' claim on Colorado's interests in its police powers and the integrity of its criminal law system is not the kind anticipated by the Supreme Court in *Coeur d'Alene*. 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438. Defendants cite no authority for the proposition that a state's police power or the integrity of its criminal law systems are special sovereign interests. The Tenth Circuit has described the "special sovereignty interests" language of *Coeur d'Alene* as applying to only the "extreme and unusual case." *Elephant Butte*, 160 F.3d at 612. This is not such a case. Colorado's state sovereign interests in the welfare of NGRI patients is not similar in kind to the property interests represented in *Coeur d'Alene* and *ANR Pipeline*. My decision to allow this suit to proceed in federal court will have minimal effect on the sovereignty and autonomy of Colorado. Finally, the balance of Colorado's interest and the federal rights and interests at stake in this matter weigh in favor of federal jurisdiction. *See Elephant Butte*, 160 F.3d at 613. The relief requested by Plaintiffs in their second amended complaint, involves enjoining a continuing violation of federal law that would have only an incidental effect on state sovereign interests. *See Coeur d'Alene*, 117 S.Ct. at 2040. I conclude that, federal jurisdiction over the individual Defendants in their official capacities,

for prospective relief is not barred by the Eleventh Amendment and instead is allowed under the *Ex parte Young* exception. *See Elephant Butte*, 160 F.3d at 612. Therefore, this claim survives.

### 2. Qualified Immunity

 Defendants next argue that the doctrine of qualified immunity bars Plaintiffs' claims against the individual Defendants sued in their individual capacity. Qualified immunity shields government officials from liability when performing discretionary functions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir.1998). "The key to the qualified immunity inquiry is the 'objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken.'" *Id.* (internal citations omitted). A two part test determines whether qualified immunity is implicated:

> First, we determine whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right. If the answer is yes, then we determine whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right.

*Id.* (internal citations omitted).

As a threshold matter, Defendants argue that Plaintiffs' claim must be dismissed because respondeat superior liability is not a basis upon which to rest liability for a constitutional violation. *See, e.g., Monell v. Dep't of Social Services*, 436 U.S. 658, 694–695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants also argue that Plaintiffs' claim does not implicate the personal participation of Defendants. However, I conclude that the well-pled allegations in the second amended complaint, taken as true and construed in

Plaintiffs' favor, implicate the personal fault of the individual Defendants and do not rely on respondeat superior liability.

Defendants attempt to distinguish this case from *Sutton* in which the Tenth Circuit rejected a defense of qualified immunity. *Sutton*, 173 F.3d 1226. Defendants characterize this case as follows:

> the complaint contained allegations of personal participation of the individual defendant in that the individual defendant, in a position of authority, knew of the *particular* assaults and did nothing to prevent them, and the law was clearly established that knowledge of such assaults and failure to take action to prevent them constituted a constitutional violation.

(Reply in Support of Motion to Dismiss, p. 10) (emphasis in the original). Here, the allegations in *Sutton* parallel Plaintiffs' allegations in the second amended complaint.

In their second amended complaint, Plaintiffs make the following allegations against the individual Defendants. They allege that Mr. Hawkins "has been and continues to be personally aware of the conditions at CMHI–P and the lack of adequate medical and psychiatric care and treatment provided to the patients at CMHI–P." (Second Amended Complaint, ¶ 33). They allege that Mr. Toerber is likewise "personally aware of the conditions at CMHI–P and the inadequate medical and psychiatric care and treatment provided to the patients held at CMHI–P." (Second Amended Complaint, ¶ 35). Plaintiffs further allege that Defendants have operated the CMHI–P in a manner that consciously and systematically deprives Plaintiffs of appropriate care. (Second Amended Complaint, ¶ 59). Plaintiffs allege that Mr. Toerber and Mr. Hawkins "had actual notice from planning documents developed and published by CMHI–P that the level of staffing in the forensic unit was not adequate ... to provide the minimally adequate treatment guaranteed by the United States Constitution. De-

spite this knowledge, Defendants, including Defendants Toerber and Hawkins, failed to take reasonable actions to maintain sufficient levels of trained professional staff ..." (Second Amended Complaint, ¶ 63). They go on to allege that Defendants Toerber and Hawkins subjected Plaintiffs to a pattern of substandard care, failed to secure the financial and human resources constitutionally necessary, and failed to investigate, intervene or correct substandard care of which they had direct knowledge. (Second Amended Complaint, ¶ 71). Finally, Plaintiffs specify that these failures by the individual Defendants continue to violate the Due Process Clause of the Fourteenth Amendment. (Second Amended Complaint, ¶ 86).

Because I take all Plaintiffs' allegations as true in the context of a motion to dismiss, I deny Defendants' motion. *See Sutton*, 173 F.3d at 1236. Plaintiffs allege that the individual Defendants personally participated in the Due Process violations. Defendants concede, as they must, that a committed person has a constitutional right to adequate food, shelter, clothing, and medical care. (Motion to Dismiss, p. 20); *see also Youngberg v. Romeo*, 457 U.S. 307, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (committed individuals "enjoy[ ] constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."). Further, I conclude that Plaintiffs allege Due Process violations of a type known by a reasonable person in the health care administration field. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (a right is established if is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."). As the case is now postured, I deny Defendants' motion to dismiss for qualified immunity.

## C. Americans with Disabilities Act

 ▪In their third claim for relief, Plaintiffs allege violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq. ("ADA"). Title II of the ADA generally prohibits any form of discrimination against disabled persons by a public entity. *See, e.g., Thompson v. Colorado*, 29 F.Supp.2d 1226 (D.Colo.1998). Plaintiffs assert this claim against both the individual and state Defendants. In their response to Defendants' motion to dismiss, Plaintiffs concede that the Tenth Circuit does not allow Title II ADA suits against individuals in their personal capacities. *See Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir.1999); *Montez v. Romer*, 32 F.Supp.2d 1235, 1240–41 (D.Colo.1999). Thus, I grant Defendants' motion to dismiss the individual Defendants in this capacity.

Defendants again argue that Plaintiffs cannot assert this ADA claim against the state or state officials because of Eleventh Amendment sovereign immunity. Plaintiffs initially respond that, by removing this case to federal court, Defendants waived their Eleventh Amendment defense. *See ANR Pipeline*, 150 F.3d at 1188 ("A state may waive its Eleventh Amendment immunity by consenting to be sued, but only in the clearest and most unmistakable terms."); *See Sutton*, 173 F.3d at 1234 (citing *Gallagher*, 502 F.2d at 830) ("[A]n unequivocal intent to waive immunity seems clear when a state, facing suit in its own courts, purposefully seeks a federal forum."). However, for the reasons stated earlier in this opinion, I cannot conclude that Eleventh Amendment immunity is waived by Defendants in "clear" and "unmistakable" terms. The Notice of Removal effectively reserved this defense.

Defendants next argue that Title II of the ADA unconstitutionally abrogates sovereign immunity. They contend that even an express statutory waiver of sovereign immunity, such as that contained in the ADA, 42 U.S.C. § 12202, is ineffective if Congress does not possess constitutional authority to subject a nonconsenting state to suit under the Act.

The Supreme Court has established a two-part test to determine whether Congress properly abrogated a states' Eleventh Amendment immunity through its Fourteenth Amendment enforcement powers: (1) a court must determine whether Congress has unequivocally expressed its intent to abrogate immunity; and (2) a court must determine whether Congress acted pursuant to a valid exercise of power. *See Martin v. Kansas*, 190 F.3d 1120 (10th Cir.1999) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Although Defendants concede that the ADA "unequivocally" abrogates immunity, they contend that Title II's abrogation is unconstitutional. *See, e.g., Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir.1999) (en banc) (finding Title II of the ADA an unconstitutional exercise of Congress' Fourteenth Amendment powers); *but see Martin*, 190 F.3d 1120 (finding Title I of the ADA a permissible exercise of Congress' powers). Therefore, Defendants maintain that this suit is barred by sovereign immunity. I hold the issue of the constitutionality of Title II of the ADA in abeyance pending the Supreme Court's ruling in *Kimel v. Florida Bd. of Regents*, 139 F.3d 1426 (11th Cir.1998), cert. granted by *Kimel v. Florida Bd. of Regents*, —— U.S. ——, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999) and *United States v. Florida Bd. of Regents*, —— U.S. ——, 119 S.Ct. 902, —— L.Ed.2d —— (1999). Oral arguments were heard by the Court on October 13, 1999.

28 U.S.C. § 2403(a) states, in relevant part:

In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and

shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Under the District of Colorado's local rules, "a party who questions the constitutionality of an act of Congress in an action where neither the United States nor any of its agencies, officers, or employees is a party, *shall* give written notice, in duplicate, to the court ..." D.C.Colo.LR 24.1 (emphasis added); *see also In re Bloch,* 207 B.R. 944, 952 (D.Colo.1997) (applying Local Rule 24.1 and stating "[f]ailure to notify the Attorney General is not a jurisdictional defect, and belated notice satisfies any requirement ... Certification has occurred even after judgment at the appellate level.") (internal citations omitted). Defendants have not yet filed formal notice with this Court regarding its claim that the ADA is an unconstitutional enactment. Only upon receipt of this notice must I comply with the certification procedures in 28 U.S.C. § 2403. Therefore, if Defendants intend to persist in their assertions of Title II's constitutional infirmity, they must comply with D.C.Colo.LR 24.1 within 10 days from the date of this Order.

### D. Negligence

In this fourth and final claim for relief, Plaintiffs allege that the actions and omissions of Defendants and their employees constitute a substantial breach of duties owed to Plaintiffs. Defendants submit several grounds for dismissal of this claim. First, Defendants argue that Plaintiffs' allegations are not within an area for which governmental immunity has been waived under Colorado law. Second, Plaintiffs have failed to comply with the notice requirements under Colorado law. Finally, Defendants argue that I should not exercise jurisdiction over this claim.

### 1. Governmental Immunity

The Colorado Governmental Immunity Act, C.R.S. § 24–10–101, et seq. (the "CGIA"), covers "all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort". C.R.S. § 24–10–102. "Public entity" is defined as "the state, county, city and county, municipality, school district ... and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law". C.R.S. § 24–10–103(5). "Public employee" is defined as "an officer, employee, servant, or authorized volunteer of the public entity". C.R.S. § 24–10–103(4). Neither Plaintiffs nor Defendants dispute that the DHS and the CMHI-P qualify as public entities under the CGIA or that Mr. Toerber and Mr. Hawkins are public employees of these entities.

Although the CGIA generally grants immunity to public entities and their employees, it also contains statutory waivers of immunity.

> (1) A public entity shall be immune from liability in all claims for injury which lie in tort ... Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> ...
>
> (b) The operation of any public hospital, correctional facility, as defined in section 17–1–102, C.R.S., or jail by such public entity.

C.R.S. § 24–10–106. "Operation" is defined in the CGIA as "the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public hospital ..." C.R.S. § 24–10–103(3)(b). Sovereign immunity is waived only if Defendants' activities relate to the hospital's purpose. *See Pack,* 894 P.2d at 37.

Plaintiffs argue that, while their negligence claim obviously lies in tort, their claim falls squarely within the statutory exception for the operation of a public hospital. Defendants acknowledge that "as a matter of statute and logic, provision of care and treatment to the Plaintiffs falls within the parameters of operation as a public hospital." The Colorado Supreme Court recently held that "the CGIA's waiver provisions are entitled to deferential construction in favor of victims injured by the negligence of governmental agents, while the immunity provisions are subject to strict construction." *Walton v. State,* 968 P.2d 636, 643 (Colo.1998); *see also Pack v. Arkansas Valley Correctional Facility,* 894 P.2d 34 (Colo.App.1995).

The CMHI–P's specific statutory purpose is to provide for the "treatment and cure of such persons as may become mentally ill from any cause." C.R.S. § 24–13–101(1). Plaintiffs base their negligence claim on Defendants' alleged failure to comply with this statutory duty. This clearly relates to the CMHI–P's purpose of treating the mentally ill. Furthermore, the CMHI–P is a "public hospital" under the exception. Therefore, I conclude that CGIA immunity is waived for the public entity Defendants, the DHS and the CMHI–P.

■ Defendants next argue that Plaintiffs' claim sounds in medical malpractice and vicarious liability because Plaintiffs seek to hold the individual Defendants liable in tort for allegations that Plaintiffs have not been provided adequate medical care. Defendants argue that there is no such claim as medical negligence by respondeat superior. However, Plaintiffs' second amended complaint is sufficient in alleging individual negligence based on knowledge and failure to act.

Defendants finally assert that Plaintiffs fail to allege that the individual Defendants' actions were willful or wanton, thereby requiring me to dismiss this claim. C.R.S. § 24–10–110(5)(b). However, C.R.S. § 24–10–118(2)(a) does not require willful and wanton conduct for claims involving operation of public hospitals. For purposes of this motion to dismiss, in which I take all Plaintiffs' allegations as true, Plaintiffs have satisfied their pleading requirements as to the individual Defendants. Therefore, I deny Defendants' motion to dismiss.

### 2. Notice Requirements of the CGIA

■ Defendants contend that Plaintiffs' notices of claims, required under the CGIA, fail to invoke the criminal statutes applicable to Plaintiffs' NGRI status. C.R.S. § 16–8–101, et seq. Defendants, therefore, contend that Plaintiffs' claim fails the notice requirements of C.R.S. § 24–10–109 and should be dismissed.

■ I conclude that Plaintiffs sufficiently complied with the notice requirements of the CGIA. The CGIA notice provisions do not require Plaintiffs to identify the specific legal duty which forms the basis of their negligence claims. Instead, the CGIA requires that notices contain the following information: (1) the name and address of the claimant and the name and address of his attorney; (2) a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (3) the name and address of any public employee involved; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the monetary damages being requested. Plaintiffs' notices comply with these provisions. (Exh. A to Motion to Dismiss). Defendants impermissibly read an additional requirement into the notice provisions. They argue that, to the extent Plaintiffs rely on any duties that might be presented in the NGRI statute, C.R.S. § 16–8–101 et seq., Plaintiffs fail to reference this statute in their notice. This argument fails for a number of reasons.

■ First, as Plaintiffs note, the NGRI statute supplies no duties for the care and

treatment of NGRI patients. This is why they contend the Treatment Act supplies these duties. Therefore, Plaintiffs do not base their negligence claims on duties in the NGRI statute. Second, in their notices, Plaintiffs disclose that they were "found to be not guilty by reason of insanity." (Exh. A, Motion to Dismiss).. This suffices to put Defendants on notice of the possible relevance of the NGRI statute. The Colorado Supreme Court has held that a plaintiff need only substantially comply with the CGIA's notice provisions. *See Woodsmall v. Regional Transport. Dist.*, 800 P.2d 63, 69 (Colo.1990). Therefore, to the extent that notice of NGRI status may be required, Plaintiffs have substantially complied with the notice provisions. Defendants have shown no prejudice to their ability to defend by reason of any alleged omission in the notice. *See id.* Finally, as noted above, the CGIA notice requirements do not require Plaintiff to identify the specific legal duty which forms the basis of their claims. The issue of whether a defendant owes a duty to the plaintiff is legal, not factual. *See Davenport v. Community Corrections of Pikes Peak Region, Inc.*, 962 P.2d 963, 966 (Colo. 1998) ("To recover on a claim of negligence, the plaintiff must establish the existence of a *legal duty* on the part of the defendant, breach of that duty by the defendant, causation, and damages ... The initial determination of whether a defendant owes a duty to the plaintiff is a *question of law to be considered by the court.*") (emphasis added). The CGIA does not require the notice of legal grounds or claims for relief. Defendants' motion to dismiss on this basis is denied.

### 3. Jurisdiction over Negligence Claim

Defendants again argue that because Plaintiffs remain in the continuing jurisdiction of the state court under the NGRI statute, *Gilliland,* 769 P.2d at 479, I should not exercise subject matter jurisdiction of Plaintiffs' fourth claim for relief. I decline to accept this basis for dismissal for the same reasons that I declined to accept it for other claims. Defendants removed this case from state court to federal court. Further, the decision to abstain is discretionary and only undertaken with the greatest caution. *See Colorado River Water, 424 U.S. at 813–814, 96 S.Ct. 1236 ("The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."). I decline to so abstain.

### E. 42 U.S.C. § 1985

Defendants note that 42 U.S.C. § 1985 is mentioned in Plaintiffs' second amended complaint, but no claim is included under this provision. To the extent that Plaintiffs assert any such claim, it is hereby dismissed. Plaintiffs do not contest Defendants' argument on this issue.

### IV.

In conclusion, I determine that the following claims survive this Order:

(1) Violation of Colorado's Care and Treatment of the Mentally Ill Act (as against all Defendants, but there is no longer any entitlement to damages);

(2) Violation of Due Process pursuant to 42 U.S.C. § 1983 (as against Mr. Hawkins and Mr. Toerber in their official capacities for prospective injunctive relief only, and in their individual capacities as pled);

(3) Violation of Title II of the ADA (as to the State Defendants and individual Defendants in their official capacities only); and

(4) Negligence (as to all Defendants).

Accordingly, I ORDER that:

(1) Defendants' motion to dismiss Plaintiffs' first claim for relief under the Treatment Act is GRANTED only to the extent that damages are requested;

(2) Defendants' motion to dismiss Plaintiffs' second claim for relief for violation of Due Process pursuant to 42 U.S.C. § 1983 is GRANTED as to Defendants DHS and CMHI–P. This claim survives against Mr. Toerber and Mr. Hawkins in their official capacities for prospective injunctive relief only, and survives against Mr. Toerber and Mr. Hawkins in their individual capacities as pled;

(3) Defendants' motion to dismiss Plaintiffs' third claim for relief for violation of the ADA is HELD IN ABEYANCE;

(4) To preserve arguments of the constitutional infirmity of Title II of the ADA, Defendants must comply with D.C.Colo.LR 24.1 within 10 days from the date of this Order;

(5) Defendants' motion to dismiss Plaintiffs' fourth claim for relief for Negligence is DENIED; and

(6) To the extent that Plaintiffs assert a claim under 42 U.S.C. § 1985, Defendants' motion to dismiss is GRANTED.