James NEIBERGER, Danford Eldridge, Paul Gardner, Terence Jacobs, Bradley Glennie, David Snyders, Lawrence Eubank and Allen Hall, Plaintiffs,

v.

Robert HAWKINS, individually and in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo; Garry Toerber, individually and in his official capacity as Associate Manager for the Office of Direct Services of the Department of Human Services; Colorado Department of Human Services; and Colorado Mental Health Institute at Pueblo, Defendants.

No. CIV.A.99–B–1120(MJW).

United States District Court,
D. Colorado.

May 22, 2002.

James E. Hartley, Steven W. Black, Stephanie B. Edinger, Holland & Hart, LLP, Denver, CO, Thomas F. Quinn, Solomon, Pearl, Blum, Neymann & Stich, LLP, Denver, CO, Sylvia V. Kirk, Englewood, CO, Kathleen Mullen, Denver, CO, David H. Miller, King & Greisen, LLP, Denver, CO, for James Neiberger, Danford Eldridge, Paul Gardner, and Terence Jacobs.

James E. Hartley, Steven W. Black, Stephanie B. Edinger, Holland & Hart, LLP, Denver, CO, Thomas Baker Quinn, White & Steele, PC, Denver, CO, Gary M. Clexton, King, Clexton & Feola, LLC, Denver, CO, Kathleen Mullen, Denver, CO, David H. Miller, King & Greisen, LLP, Denver, CO, for Bradley Glennie, David Snyders, Lawrence Eubank, and Allen Hall.

Cathy H. Greer, Pamela Leggett Skelton, Wells, Anderson & Race, LLP, Denver, CO, Christine M. Arguello, Attorney General's Office, State Services Section, Denver, CO, for Robert Hawkins.

Cathy H. Greer, Pamela Leggett Skelton, Wells, Anderson & Race, LLP, Denver, CO, David R. DeMuro, Vaughan & DeMuro, Denver, CO, Christine M. Arguello, Attorney General's Office, State Services Section, Denver, CO, for Garry Toerber.

Mickey T. Mihm, Ronald H. Nemirow, Kennedy & Christopher, PC, Cathy H. Greer, Pamela Leggett Skelton, Wells, Anderson & Race, LLP, Denver, CO, Christine M. Arguello, Linda S. Comer, Attorney General's Office, State Services Section, Denver, CO, for Colorado Department of Human Services and Colorado Mental Health Institute at Pueblo

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs James Neiberger, Danford Eldridge, Paul Gardner, Terence Jacobs, Bradley Glennie, David Snyders, Lawrence Eubank and Allen Hall ("Plaintiffs") bring claims for violation of the Care and Treatment of the Mentally Ill Act ("Treatment Act"), common law negligence/ negligence *per se*, violation of the due process clause of the Fourteenth Amendment to the United States Constitution, and violation of § 504 of the Rehabilitation Act against Defendants Robert Hawkins, individually and in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo ("CMHI–P"); Garry Toerber, individually and in his official capacity as Associate Manager for the Office of Direct Services of the Department of Human Services ("DHS"); Colorado Department of Human Services; and Colorado Mental Health Institute at Pueblo. All Defendants except Mr. Toerber ("Defendants") move, via seven motions, to dismiss various claims. Mr. Toerber moves separately to dismiss various claims. Defendants move for a stay. Finally, Plaintiffs move to certify the case as a class action. The motions are adequately briefed and orally argued. For the reasons set forth below, I grant Defendants' motions to dismiss Plaintiffs' second claim for relief for negligence/ negligence *per se*; grant Defendants' motion to dismiss Plaintiffs' second claim for relief as to potential class members; grant in part and deny in part Defendants' motion to dismiss Plaintiffs' Third Amended Complaint; grant Mr. Toerber's motion in part and deny it in part; deny the motion to stay as moot; and grant the motion for class certification.

### I. Facts and Procedural History

The facts in this case are set out in *Neiberger v. Hawkins*, 70 F.Supp.2d 1177 (D.Colo. 1999), *aff'd*, 6 Fed.Appx. 683, 2001 WL 227405 (10th Cir.2001), and need not be fully repeated here. This action was brought by patients of the Forensic Institute at the CMHI–P who were placed there pursuant to criminal adjudications of not guilty by reason of insanity. Plaintiffs allege a combination of hostile conditions and policies that prevent

them from obtaining appropriate medical and psychiatric care. The original Plaintiffs in the case were James Neiberger, Danford Eldridge, Paul Gardner, and Terence Jacobs ("Original Plaintiffs").

In 1999 Defendants moved to dismiss Plaintiffs' Second Amended Complaint. In *Neiberger v. Hawkins*, 70 F.Supp.2d 1177 (D.Colo.1999) I granted the motion in part, denied it in part, and held it in abeyance in part. The following claims survived that Order: (1) declaratory and injunctive relief for violation of Colorado's Care and Treatment of the Mentally Ill Act as against all Defendants, but without any entitlement to damages; (2) violation of Due Process pursuant to 42 U.S.C. § 1983 as against Mr. Hawkins and Mr. Toerber in their official capacities for prospective injunctive relief only, and in their individual capacities as pled; (3) violation of Title II of the ADA as against the State Defendants and individual Defendants in their official capacities; and (4) negligence as to all Defendants. I also denied Defendants' assertions of qualified immunity and immunity pursuant to the Colorado Governmental Immunity Act. Defendants pursued an interlocutory appeal, and the case was stayed. The Tenth Circuit affirmed and remanded on March 8, 2001. *See Neiberger v. Hawkins*, 6 Fed.Appx. 683, 2001 WL 227405 (10th Cir.2001). The United States Supreme Court denied the petition for writ of *certiorari*. *See Hawkins v. Neiberger*, — U.S. —, 122 S.Ct. 346, 151 L.Ed.2d 261 (Oct. 9, 2001). As part of Defendants' original motion to dismiss, I held in abeyance that portion of the motion which sought dismissal of Plaintiffs' ADA claim. On July 9, 2001 I granted that motion, holding that Title II of the ADA did not validly abrogate the States' Eleventh Amendment immunity from suit. *See Neiberger v. Hawkins*, 150 F.Supp.2d 1118 (D.Colo.2001).

On December 18, 2001 Plaintiffs filed a Third Amended Complaint. In it, Plaintiffs added four new Plaintiffs ("New Plaintiffs") with histories and claims similar to the Original Plaintiffs, and substituted a claim under the Rehabilitation Act for the dismissed ADA claim. Defendants have filed motions to dismiss the Third Amended Complaint. All De-

fendants except Mr. Toerber move in four separate motions to dismiss Bradley Glennie's, David Snyders's, Lawrence Eubank's and Allen Hall's second claim for relief for negligence/ negligence *per se*. All Defendants except Mr. Toerber move in a separate motion to dismiss Plaintiffs' second claim for relief as to potential class members. All Defendants except Mr. Toerber move in a separate motion to dismiss Plaintiffs' Third Amended Complaint. Defendant Toerber moves separately to dismiss the state law tort claims made against him by the four New Plaintiffs and to dismiss claims made against him for prospective injunctive relief. Defendants move to stay discovery, except to decide the issue of sovereign immunity. Finally, Plaintiffs move for class certification. I first consider the motions to dismiss and the motion to stay before addressing class certification.

## II. Motions to Dismiss

Defendants and Mr. Toerber bring separate motions to dismiss. Because Mr. Toerber raises issues not raised by Defendants' motions, I consider his motion separately.

### A. Applicable Standards

The various motions to dismiss are brought pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

### 1. Rule 12(b)(1)

█ A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See King v. United States*, 53 F.Supp.2d 1056, 1064 (D.Colo. 1999); *Neiberger*, 70 F.Supp.2d at 1181; *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo.1993) (immunity under the Colorado Governmental Immunity Act is a jurisdictional issue).

█ Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th

Cir.1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

Under Rule 12(b)(1), I have wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing in making appropriate factual findings on jurisdictional issues. *See Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987). In deciding whether sovereign immunity has been waived, I may receive any competent evidence pertaining to the motion, including evidence outside the pleadings, without converting it into a summary judgment motion. *See Trinity,* 848 P.2d at 924–25. Further, "[a]ny factual dispute upon which the existence of jurisdiction may turn is for the court alone, and not a jury to determine." *Id.* at 924. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso,* 495 F.2d at 909. Therefore, Plaintiffs have the burden of showing that Defendants are not immune from suit. *See Trinity,* 848 P.2d at 925.

### 2. Rule 12(b)(6)

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999).

Fed.R.Civ.P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court. Fed. R. Civ. P 8(a)

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99. A plaintiff is not required to state precisely each element of the claim. 5 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154–59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988).

### B. Defendants' Motions to Dismiss

Defendants' motions to dismiss collectively challenge the second, third, and fourth claims in the Third Amended Complaint.

### 1. Second Claim for Relief–Negligence/Negligence Per Se

Defendants move to dismiss the New Plaintiffs' second claim for relief, the Original Plaintiffs' second claim for relief, as well as the putative class Plaintiffs' second claim for relief. Defendants argue that Plaintiffs are not entitled to damages under their negligence claim if the alleged negligence is based on violation of the Colorado Care and Treatment of the Mentally Ill Act. Defendants further assert that because Plaintiffs are limited to injunctive and declaratory relief, their second claim for relief is duplicative of their first claim for relief for violation of the Treatment Act.

Plaintiffs' fourth claim for relief in their Second Amended Complaint was titled "Common Law Negligence." That claim alleged that the Defendants breached duties of care owed to the Plaintiffs to provide each of them with medical and psychiatric care suited to each individual's needs, delivered in the least restrictive environment, and allowing the participation of family members. *See* Second Amended Complaint at ¶ 97. Plaintiffs next alleged that

defendants ... breached and continue to breach their duties of care owed to the members of the plaintiff class and the individually-named plaintiffs to provide each of them with the level of and quality of medical and psychiatric care and treatment required under the Care and Treatment of the Mentally Ill Act, Section 27–10–101, C.R.S., *et seq.*, ... and regulatory standards promulgated pursuant to the Act, which inform the common law standard of care.

*Id.* at ¶ 98. In *Neiberger,* 70 F.Supp.2d at 1186, I examined this claim and concluded that "Plaintiffs do not possess a private right of action for damages under the Treatment Act," thus limiting the claim to one for declaratory and injunctive relief.

Plaintiffs' second claim for relief in their Third Amended Complaint is titled "Common Law Negligence/ Negligence Per Se." That claim alleges that the Defendants have breached duties of care owed to the Plaintiffs to provide each of them with medical and psychiatric care suited to each individual's needs, delivered in the least restrictive environment, and allowing the participation of family members. *See* Third Amended Complaint at ¶ 221. This paragraph is virtually identical to paragraph 97 in the Second Amended Complaint. Plaintiffs then allege:

> In addition, defendants have breached and continue to breach their duties of care owed to the individually named plaintiffs and members of the plaintiff class to provide each of them with the level and quality of medical and psychiatric care and treatment required under the Care and Treatment of the Mentally Ill Act, Section 27–10–101, C.R.S., *et seq.*, ... and regulatory standards promulgated pursuant to the Act, as well as under 42 C.F.R. § 482 et seq., and Title V of the Public Health Services Act, 42 U.S.C. 290ii, all of which inform the common law standard of care, and thus defendant's conduct constitutes negligence per se.

*Id.* at 222. The two claims are virtually identical, except the Third Amended Complaint lists an additional regulation, and additional statute, and states that defendant's conduct constitutes negligence *per se* rather than common law negligence.

In order to state a claim for negligence in Colorado, "a plaintiff must allege that (1) he incurred injuries or damages, (2) defendant was negligent, and (3) defendant's negligence caused his injuries or damages." *Thompson v. Riveland,* 714 P.2d 1338, 1340 (Colo.Ct.App.1986) (emphasis added) (citing *Indep. Lumber Co. v. Leatherwood,* 102 Colo. 460, 79 P.2d 1052 (1938); CJI–CIV.2d 9:1 (1980)). Negligence requires proof that a defendant's conduct fell below an acceptable standard of care and thus involves proof of fault. *See Fibreboard Corp. v. Fenton,* 845 P.2d 1168 (Colo.1993). Negligence *per se* is simply negligence with the standard of care being set forth in a statute or ordinance. *See Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo.1986):

> Negligence per se serves to establish the existence of the defendant's breach of a legally cognizable duty owed to the plaintiff. The standard of conduct is adopted by the court from the statute or ordinance, and violation of the enactment conclusively establishes negligence. The party seeking to recover under the doctrine of negligence per se must show not only that the defendant violated the statutory standard, but also that the violation was the proximate cause of the injuries sustained.

*Largo,* 727 P.2d at 1107–08 (Colo.1986) (citations and footnote omitted). Additionally, a plaintiff must show that he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent. *See Largo,* 727 P.2d at 1108 (citing *Dunbar v. Olivieri,* 97 Colo. 381, 50 P.2d 64 (1935); *Iverson v. Solsbery,* 641 P.2d 314 (Colo.Ct.App.1982)).

Here, Plaintiffs' negligence claim requires proof that Defendants have violated the Treatment Act. Without the Treatment Act, there is no duty or applicable standard of care. Defendants argue that Plaintiffs are not entitled to damages under their negligence claim because the alleged negligence is based on violation of the Treatment Act. I agree. In *Neiberger,* 70 F.Supp.2d at 1186, I concluded that "Plaintiffs do not possess a

private right of actions for damages under the Treatment Act." Plaintiffs may not receive through a negligence *per se* claim what they could not receive by bringing a direct claim under the statute. I therefore agree with Defendants that Plaintiffs are not entitled to monetary damages insofar as their second claim for relief alleges negligence or negligence *per se* based on violations of the Treatment Act.

▮ Defendants further assert that Plaintiffs' second claim for relief is duplicative of their first claim for relief for violation of the Treatment Act. I again agree. Plaintiffs' first claim under the Care and Treatment Act requires that the Plaintiffs show a violation of the Act. Should they prevail on that claim, Plaintiffs are entitled only to injunctive and/ or declaratory relief. Likewise, Plaintiffs' second claim under negligence/ negligence *per se* requires that the Plaintiffs show a violation of the Treatment Act. Should they prevail, Plaintiffs are entitled only to injunctive and/ or declaratory relief. Furthermore, Plaintiffs cite, and I found, no case law supporting a negligence claim where monetary damages are impermissible.

Although Plaintiffs also cite 42 C.F.R. § 482 and 42 U.S.C. § 290ii as informing the common law duty and standard of care, these additions do not change my analysis. 42 U.S.C. § 290ii states that a

health care facility[ ] that receives support in any form from any program supported in whole or in part with funds appropriated to any Federal department or agency shall protect and promote the rights of each resident of the facility, including the right to be free from physical or mental abuse, corporal punishment, and any restraints or involuntary seclusions imposed for purposes of discipline or convenience.

42 U.S.C. § 290ii(a). The statute goes on to limit the use of restraints and seclusion on any resident of a health care facility receiving federal funds. *See id.* at § 290ii(b)(1)-(2). 42 U.S.C. § 290ii-2 is titled "Regulations and enforcement." It provides for ·the promulgation of federal regulations and the requirements for those regulations. *See id.* at § 290ii-2(a)-(b). It then states that

[a] facility to which this part applies that fails to comply with any requirement of this part, including a failure to provide appropriate training, shall not be eligible for participation in any program supported in whole or in part by funds appropriated to any Federal department or agency.

*Id.* at § 290ii-2(c). Like the Treatment Act, no private right of enforcement is provided for or contemplated. Plaintiffs cite, and I found, no case which allows a private right of action based on this statute or Title V of the Public Health Services Act. Likewise, Plaintiffs cite, and I found, no case which uses this statute or Title V of the Public Health Services Act to create a duty or set the standard of care for a negligence claim.

42 C.F.R. § 482 *et seq.* sets the standards for, *inter alia,* psychiatric hospitals participating in Medicare. *See* 42 C.F.R. § 482.1(2). These regulations "serve as the basis of survey activities for the purpose of determining whether a hospital qualifies for a provider agreement under Medicare and Medicaid." *Id.* at § 482.1(5)(b). Thus, compliance with these regulations is a condition of participation in Medicare. However, the regulations do not provide a private right of action. Further, it is undisputed that the IFP is not a Medicare participant. *See* Exhibit A to Defendants Motion to Dismiss Plaintiffs' Third Amended Complaint. Therefore, these regulations are inapplicable to Plaintiffs case.

Therefore, I dismiss Plaintiffs' second claim for relief as being duplicative of their first claim for relief. This analysis is equally applicable to Defendants' motion to dismiss the putative class members' second claim for relief and Mr. Toerber's motion to dismiss the Plaintiffs' second claim for relief. Because I conclude that Plaintiffs' second claim for relief cannot survive, it is unnecessary to consider Defendants' remaining arguments.

*2. Third Claim for Relief–Violation of the Due Process Clause of the United States Constitution Pursuant to 42 U.S.C. § 1983.*

▮ Defendants next move to dismiss Plaintiffs' § 1983 claim on the ground that it is barred by the statute of limitations. "Lim-

itations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules." *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) (internal quotations omitted); *Hunt v. Bennett,* 17 F.3d 1263, 1265 (10th Cir.1994). The relevant limitation period for this § 1983 claim is the two-year Colorado period for personal injury actions. *See Hunt,* 17 F.3d at 1265–66; Colo.Rev.Stat. § 13–80–102; *Blake v. Dickason,* 997 F.2d 749, 750–51 (10th Cir.1993) (applying § 13–80–102 to § 1983 claim).

■ Plaintiffs admit that many of the facts underlying their claims occurred more than two years ago. They assert, however, that the statute of limitations should be tolled. Colorado's tolling rules apply. *See Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Plaintiffs argue that the statute should be tolled because they have been under a disability. I agree. Colo.Rev.Stat. § 13–81–103 provides for the tolling of any limitations period for the commencement of an action by any person suffering from a disability, and provides that unrepresented persons with a disability may bring an action up to two years after the disability terminates. *See id.* at § 13–81–103(1)(c). It is the burden of the party alleging the disability to show disability. *See Overheiser v. Safeway Stores, Inc.,* 814 P.2d 12, 13 (Colo.Ct.App.1991). The statutory definition of a "person under disability" for statute of limitations purposes includes mental incompetence. *See* Colo.Rev.Stat. § 13–81–101(3). Colo.Rev.Stat. § 27–10.5–135 provides that "[w]henever the terms ... 'mentally or mental incompetent', [or] 'mental incompetency' ... are used in the laws of the state of Colorado, they shall be deemed to refer to the insane, as defined in section 16–8–101 ...." Colo.Rev.Stat. § 16–8–101 provides the legal definition of insanity for criminal proceedings.

■ Here, the Plaintiffs were committed by reason of an adjudication of insanity. Under Colorado law, when the

> chief officer of the institution in which a defendant has been committed after a finding of not guilty by reason of insanity

determines that the defendant no longer requires hospitalization because he no longer suffers from a mental disease or defect which is likely to cause him to be dangerous to himself, to others, or to the community in the reasonably foreseeable future, such chief officer shall report this determination to the court that committed the defendant ...

> (2) Within thirty days ... the court shall set a hearing on the discharge of the defendant ....

Colo.Rev.Stat. § 16–8–116(1)–(2). An insanity adjudication results in a presumptive continuation of a state of mental incapacity until it is shown that sanity has been restored. *See People v. Giles,* 662 P.2d 1073, 1075 (Colo.1983). Here, each of the Plaintiffs has remained committed to the care of the Defendants following their adjudications as insane. The Defendants have neither determined that any one of the Plaintiffs no longer requires hospitalization, nor have they reported such a determination to the court that committed any one of them. Therefore, the Plaintiffs remain legally insane and under a disability of mental incompetence for purposes of the tolling statute. The statute of limitations is therefore tolled.

### 3. Fourth Claim for Relief–Violation of § 504 of the Rehabilitation Act

■ Defendants also move to dismiss Plaintiffs' fourth claim for relief, violation of § 504 of the Rehabilitation Act. Defendants request that I dismiss the claim on the same basis as Plaintiffs' ADA claim. I dismissed Plaintiffs' ADA claim because Title II of the ADA did not validly abrogate the States' Eleventh Amendment immunity from suit. *See Neiberger v. Hawkins,* 150 F.Supp.2d 1118 (D.Colo.2001).

■ Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

312

...." 29 U.S.C. § 794; *Welsh v. City of Tulsa, Okla.*, 977 F.2d 1415, 1417 (10th Cir. 1992). To state a claim under section 504, a plaintiff must allege "(1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance." *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir.1992) (citations omitted); *Pahulu v. Univ. of Kan.*, 897 F.Supp. 1387 (D.Kan.1995).

42 U.S.C. § 2000d–7 provides that "[a] State shall not be immune under the Eleventh Amendment ... from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ...." Section 2000d–7 was enacted pursuant to the Rehabilitation Act Amendments of 1986 in response to *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In *Atascadero*, the Supreme Court held that Congress had not unmistakably expressed its intent to abrogate the States' Eleventh Amendment immunity under the Rehabilitation Act. *See id.; Lane v. Pena*, 518 U.S. 187, 197–98, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). By enacting section 2000d–7, "Congress sought to provide the sort of unequivocal waiver" the Court's opinion in *Atascadero* demanded. *Lane*, 518 U.S. at 198, 116 S.Ct. 2092.

The majority of courts of appeal that have considered whether the language in § 2000d–7 waives a state's immunity once the state receives federal funds have decided that it does. *See Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir.2000) (determining "Rehabilitation Act is enforceable in federal court against recipients of federal largess"); *Sandoval v. Hagan*, 197 F.3d 484, 493 (11th Cir.1999), *rev'd on other grounds sub nom. Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (§ 2000d–7(a)(1)'s "plain language manifests an unmistakable intent to condition federal funds on a state's waiver of sovereign immunity" under Title VI); *Little Rock Sch. Dist. v. Mauney*, 183 F.3d 816, 831–32 & n. 12 (8th Cir.1999) (characterizing as "an unambiguous waiver

... of immunity" a parallel provision under the IDEA's § 1403); *Litman v. George Mason Univ.*, 186 F.3d 544 (4th Cir.1999) (concluding § 2000d–7 conditions a state's receipt of Title IX funds on an unambiguous waiver of Eleventh Amendment immunity); *Clark v. California*, 123 F.3d 1267, 1271 (9th Cir.1997) (determining that § 2000d–7(a)(1) manifests a clear intent to condition a state's receipt of federal funds under the Rehabilitation Act on its consent to waive its Eleventh Amendment immunity).

The Tenth Circuit has not yet decided whether § 2000d–7 is sufficient to waive a state's immunity under the Rehabilitation Act. It has merely noted that it is "aware" of the decisions holding that § 2000d–7 is indeed sufficient. *See In re Innes*, 184 F.3d 1275, 1282 (10th Cir.1999). In any event, I conclude that § 2000d–7 is sufficient to waive Colorado's immunity under § 504 of the Rehabilitation Act. Because I conclude that Colorado's immunity is waived with respect to this claim, I need not address whether Congress properly abrogated the state's immunity. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir.1999); *Robinson v. Kansas*, 117 F.Supp.2d 1124, 1134 (D.Kan.2000).

However, individual defendants are not subject to liability in their individual capacities under Rehabilitation Act. *See Montez v. Romer*, 32 F.Supp.2d 1235, 1240–41 (D.Colo. 1999); *Moore v. Cooksey*, 2000 WL 1838274 (10th Cir. Dec.14, 2000) (affirming the decision of the district court to dismiss the Rehabilitation Act claims because individual defendants could not be held liable) (citing *Hiler v. Brown*, 177 F.3d 542, 545–46 (6th Cir.1999) (stating that the Rehabilitation Act does not permit actions against persons in their individual capacities)). I therefore conclude that Plaintiffs' fourth claim for relief must be dismissed against the Defendants in their individual capacities.

*C. Defendant Toerber's Motion to Dismiss*

Mr. Toerber moves to dismiss state law claims for damages brought by the New Plaintiffs, as well as all claims for prospective relief. Plaintiffs acknowledge that, because Mr. Toerber retired on February 28, 2001 from the DHS and CMHI–P, prospective

relief is not appropriate. I therefore dismiss all claims for prospective relief against Mr. Toerber and address his motion to dismiss state law claims for damages.

Mr. Toerber moves to dismiss the New Plaintiffs' second claim for relief on the ground that their notice of claim fails to comply with the CGIA. Because I have already concluded that Plaintiffs' second claim for relief cannot survive, I find it unnecessary to address Mr. Toerber's arguments in this regard.

### III. Motion to Stay

Defendants move to stay discovery, except on the issue of sovereign immunity, until the scope of Plaintiffs' second claim for relief has been delineated. Because I have addressed this issue in Part IIB 1, *supra,* I deny the motion to stay as moot.

### IV. Motion to Certify Class Action

Plaintiffs move to certify this case as a class action. Their proposed class consists of "all adult patients who are now or in the future will be involuntarily committed to the Institute of Forensic Psychiatry ('IFP') of the Colorado Mental Health Institute at Pueblo ('CMHIP')." Plaintiffs' Motion and Memorandum Brief in Support of Class Certification at 1.

 This court may not certify a class action unless it is satisfied the prerequisites of Fed.R.Civ.P. 23(a) have been met. Once the court is satisfied that numerosity, commonality, typicality and adequate representation have been met, it must then be satisfied the action falls within one of the three categories of Rule 23(b). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The class can only be certified after a rigorous analysis of Rule 23(a). *See Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). A party seeking class action certification must demonstrate, under a strict burden of proof, that all of the requirements of Rule 23(a) are clearly met. *See Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988); *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 435 (10th Cir.1978). In conducting the certification analysis, the court may not consider the merits of the claim. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Even if the court finds that all the requirements of Rule 23 are satisfied, the decision of whether to certify a class is firmly committed to the trial court's discretion. *See Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir. 1982). I first consider the requirements of Rule 23(a).

### A. Rule 23(a)

Under Rule 23(a) the Plaintiffs must show that the requirements of numerosity, commonality, typicality and adequate representation are met. I consider each separately.

#### 1. Numerosity

 To establish the numerosity requirement, Plaintiffs need only define the class adequately and then establish that the class is so numerous that joinder of all members is impractical. *See Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 550 (D.Colo.1998); *Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 380 (D.Colo.1993). In determining class size, the exact number of potential members need not be shown. *See Joseph v. Gen. Motors Corp.,* 109 F.R.D. 635, 639 (D.Colo.1986). Rather, I may make "common sense assumptions" to support a finding that joinder would be impracticable. *Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y. 1996); *Colo. Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 358 (D.Colo. 1999).

Although class size is the most important factor in determining impracticability of joinder, circuit courts have fashioned five other factors for district courts to consider: (1) judicial economy arising from avoiding multiple actions; (2) the geographic dispersion of the class members; (3) the financial resources of the class members and their ability to institute individual suits; (5) requests for prospective and injunctive relief that could affect future class members. *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.22[2] (3d ed.1999); *Nicodemus v. Union Pac. Corp.,* 204 F.R.D. 479,

489 (D.Wyo.2001); *Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357 (E.D.Okla. 2001).

■ Here, Plaintiffs have defined the proposed class as "all adult patients who are now or in the future will be involuntarily committed to the Institute of Forensic Psychiatry ('IFP') of the Colorado Mental Health Institute at Pueblo ('CMHIP')." *See* Plaintiffs' Motion and Memorandum Brief at 1. The IFP at CMHIP admits between 650 and 700 patients per year. The average daily census is approximately 300 patients. *See* Plaintiffs' Exhibit A. Plaintiffs argue that because the proposed class involves unknown plaintiffs, joinder is impossible. Further, the financial and medical conditions of the proposed class make it impractical if not impossible for each patient to bring his own claims. Finally, Plaintiffs argue that judicial economy is best served by a class action.

Here, because the putative class plaintiffs are institutionalized patients their financial situation makes individual suits unlikely and in some cases impossible. The requests for prospective and injunctive relief could affect future class members. *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.22[2] (3d ed.1999); *Nicodemus v. Union Pac. Corp.*, 204 F.R.D. 479, 489 (D.Wyo. 2001); *Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357 (E.D.Okla.2001). Further, judicial economy is best served by one class action suit. Thus, these factors favor class certification.

Defendants argue that because each Plaintiff has different diagnoses and treatment issues, each Plaintiff's case requires a particularized analysis. I disagree. Plaintiffs are alleging across-the-board systemic defects. Plaintiffs' experts describe a treatment facility that is woefully lacking in space, staff, and available treatments. They also describe a facility in which patients are sometimes drugged or improperly segregated as a method of control, patients who receive little or no individual therapy, an administrative supervisor who may trump treatment decisions made by the psychiatric team, and patients who are forced to attempt inappropriate or redundant treatment classes in order to "progress." Plaintiffs' experts also state

that the median length of stay for patients after adjudications of not guilty by reason of insanity is significantly longer than that of other state treatment facilities. *See* Part IIA2, *infra.* Therefore, these common issues outweigh individualized problems.

However, as noted by Defendants, not all admittees to IFP are present for treatment. Approximately 97% are there only for observation. Those present for observation have a median length of stay of 29 days. *See* Defendants' Brief at 15. Of the treatment category, patients are further delineated into the following subcategories: (1) not guilty by reason of insanity ("NGRI"); (2) incompetent to proceed; (3) civil commitments; and (4) DOC transfers. Because the Third Amended Complaint alleges that Plaintiffs have received inferior treatment compared to civilly committed patients, this subcategory is inappropriate to include in the class. Further, DOC transfers are there for stabilization only. Therefore they are not appropriate for the class.

Further, each subcategory of patients statistically has different lengths of stay in the institution. NGRI patients had an average daily attendance of 193 patients for the fiscal year 2000–01. These patients had an average length of stay of 9.3 years. *See* Defendants' Exhibit A. NGRI patients represented only 2% of admissions for that year, but because of their low turn-over they represent two-thirds of patients present on any given day. *See id.* The average daily attendance and length of stay for the other treatment subcategories was much smaller for the same time period. Incompetent to proceed patients had an average daily attendance of 47 patients and length of stay of 132 days. Civil commitment patients had an average daily attendance of 17 patients and length of stay of 10 days. Finally, the DOC transfer patients had an average daily attendance of 15 patients and length of stay of 38 days. Thus, the non-NGRI patients spend relatively little time in the hospital, rendering Plaintiffs' claims inapplicable to them. I therefore conclude that the numerosity requirement has been met. However, class certification should be limited to the class of adult NGRI patients who are now or in the future will be

involuntarily committed to the Institute of Forensic Psychiatry ("IFP") of the Colorado Mental Health Institute at Pueblo ("CMHIP").

### 2. Commonality

Rule 23(a)(2) provides that a class may be maintained only if "there are questions of law or fact common to the class." This does not require that all the questions of law or fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality. *See Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 385 (D.Colo.1993). " 'Unlike Rule 23(b)(3), which also requires that such common questions predominate over individual questions, the existence of significant common legal or factual issues is enough to satisfy Rule 23(a)(2)'s threshold commonality requirement.' " *Id.* at 384–85 (quoting *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 640 (D.Colo.1986)).

The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice. *See Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); *see also In re Intelcom Group, Inc. Sec. Litig.*, 169 F.R.D. 142, 148 (D.Colo.1996). Nor need the injuries complained of be identical among the class members and the class representative; only the harm complained of must be common to the class. *See Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D.Colo.1998); *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975).

Plaintiffs seek only injunctive and declaratory relief for the proposed class. *See* Plaintiffs' Brief at 8. Plaintiffs allege the following common questions of fact: (1) whether the involuntarily committed IFP patients are subject to antiquated, improperly designed, dangerous, inhumane and non-therapeutic physical environments which place them at risk of physical and psychological harm; (2) whether the involuntarily committed IFP patients are subject to over-crowded conditions that deprive them of minimally adequate care due to chronic under-staffing; (3) whether the involuntarily committed IFP patients are subjected to

mandatory "one size fits all" programming rather than the individual therapy needed to meet their specific needs in the least restrictive environment; (4) whether the involuntarily committed IFP patients are subjected to excessive lengths of confinement due to a lack of staff and treatment programs; (5) whether the involuntarily committed IFP patients are deprived of patient rights established in Colo.Rev.Stat. § 27–10–117; (6) whether the involuntarily committed IFP patients are subjected to a standardless and mandatory system of progression that lacks objective, measurable criteria and opportunity for independent review of staff decisions; (7) whether the involuntarily committed IFP patients are afforded the same quality of care and treatment provided to civilly committed patients; and (8) whether the involuntarily committed IFP patients are deprived of an objective and independent system of review to resolve grievances regarding care and treatment and patients' rights issues. *See* Plaintiffs' Motion and Brief at 8–9.

Defendants again argue that the individual differences in the cases require a particularized analysis. I again disagree. The Defendants mistakenly emphasize each patient's individual psycho-pathology, rather than the alleged systemic, institutional defects at IFP. It is these systemic problems which the Plaintiffs argue violate their statutory and constitutional rights. The commonality requirement is therefore met as to the NGRI patients at IFP.

### 3. Typicality

Next, a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. *See Cook*, 151 F.R.D. at 385. The circumstances of the named plaintiffs and the potential class members do not have to be identical. "Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a dispar-

ity in the damages claimed by the representative parties and the other members of the class." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1764 at 235–41. According to the Tenth Circuit, "the typicality requirement is ordinarily not argued . . . . It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir.1975); *Colo. Cross–Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 360 (D.Colo.1999).

 Defendants argue that the named Plaintiffs are not typical of the proposed class because all are men, all have spent significant time in maximum security, all have spent years at the facility, and are anomalous for their high prevalence of principal diagnoses of personality disorders. Further, some of the named Plaintiffs have escaped, and some have declined or resisted psychiatric care. However, these individual differences do not materially affect the issues in this case. Plaintiffs challenge the IFP's physical environment, staffing, available treatment programs, system of patient progression, and patient grievance program. *See* Plaintiffs' Motion and Brief at 8–9. These issues are common to all members of the NGRI class. The commonality requirement is therefore met.

### 4. Adequate Representation

 Finally, the class representatives must adequately represent the class. The criteria for assessing whether the lead plaintiffs will adequately represent the class include whether they have common interests with the members of the potential class and whether they will vigorously prosecute the interests of the class through qualified counsel. *See Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D.Colo.1998); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 386 (D.Colo.1993). In addition, the lead plaintiffs should be "knowledgeable as to the status and underlying legal basis of the action, that they are willing and able to pay notification

and other costs, that they will diligently pursue their claims, and that their interests are not antagonistic to the interests of the class." *Schwartz*, 178 F.R.D. at 553 (quotation omitted)

What constitutes adequate representation is a question of fact that depends on the circumstances of each case. 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1765 at 269. Criteria for assessing adequacy of representation include whether the plaintiff has common interests with the class members and whether the representative will vigorously prosecute the interests of the class through qualified counsel. *See id.* A plaintiff has the initial burden to show facts to support a finding that it will adequately protect the interests of the class. 2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 7.24 (3d ed.1992). Once a plaintiff has made a *prima facie* showing of adequate representation, the burden shifts to the defendant. *See id.* Absent evidence to the contrary, a presumption of adequate representation is invoked. *See id.* Any doubt regarding adequacy of representation should be resolved in favor of the upholding the class, subject to later possible reconsideration, or the creation of subclasses initially. *See id.*

 Plaintiffs argue that they will adequately represent the class. Defendants counter that Plaintiffs are not good representatives for the same reasons that their claims are not typical of those of the class. Defendants argue that the "class representatives will be so preoccupied with their unique circumstances that the representation of the class will suffer." *See* Defendants' Brief at 24. Defendants' exhibits portray the Plaintiffs as mentally ill patients who have committed violent crimes, suffer from severe personality disorders, suffer from irrational fears and paranoia, attempted escape several times, and irrationally refuse medical and psychiatric treatment from the institution. Plaintiffs' Third Amended Complaint and exhibits, on the other hand, portray relatively rational and stable people who have been subject to years of inappropriate and unhelpful drug and talk therapies. Plaintiffs argue

that they are capable of movement to far less restrictive environments, yet their diagnoses and treatments were imposed as punishment for challenging the institutional hierarchy.

Despite these differing portrayals, Plaintiffs have shown consistency through three years of litigation. Further, Plaintiffs are clearly represented by competent and experienced counsel. I therefore conclude that Plaintiffs will adequately represent the class, and that the requirements of Rule 23(a) are met.

### B. 23(b)(2)

 Plaintiffs argue that Rule 23(b) is met because "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...." Rule 23(b)(2).

The Defendants argue again that certification under Rule 23(b)(2) is inappropriate because the of the individual and differing circumstances of each Plaintiff's case. Defendants cite *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988) for the proposition that Rule 23(b)(2) certification is "appropriate where declaratory and injunctive relief sought 'do not depend on the individual facts of each case, but apply equally to all cases pending within the class.'" Defendants' Brief at 24. However, the complete citation tells a different story:

> In the instant case, the remedies the class seeks declaratory relief and an injunction directing the Secretary to follow the proper law of this circuit do not depend on the individual facts of each case, but apply equally to all cases pending within the class. *That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.*

*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988) (emphasis added) (citation omitted). *See also J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir.1999). I conclude that Plaintiffs' claims seek application of a common policy by way injunctive and declaratory relief which do not depend on the individual

facts of each case, but apply equally to all cases pending within the class. Thus, "[t]hat the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *Adamson*, 855 F.2d at 676.

### C. *Defendants' Further Arguments Against Certification*

 Defendants next argue that the proposed class is, as a practical matter, unworkable. They again argue that each case is psychiatrically and medically unique. Consequently, the determination of whether there has been a constitutional violation will be unique to each plaintiff.

The exhibits proffered by the Defendants emphasize the medical and psychiatric differences between each named Plaintiff. The Plaintiffs' proffered exhibits are expert opinions on systemic problems in the institution which appear to violate the law. If Plaintiffs are correct, as I must assume, then issues of systemic abuse and conditions can be addressed without resorting to case-by-case analysis.

 Defendants next argue that *Younger* abstention is appropriate. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). "*Younger* ... commands a federal court to abstain from exercising jurisdiction when three conditions have been established. First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir.1997).

 Abstention must be employed sparingly:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is

an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal citations and quotations omitted).

Defendants argue that abstention is appropriate because the state courts which adjudicated the Plaintiffs not guilty by reason of insanity retain jurisdiction over each case, including jurisdiction to protect the committee Plaintiffs' constitutional rights. *See Kort v. Carlson,* 723 P.2d 143, 148 (Colo.1986); *Parks v. Denver Dist. Court, Second Judicial Dist.,* 180 Colo. 202, 503 P.2d 1029 (1972). Under Colorado statutes, the committing court is required to review a committed Defendant's case every year or every six months, depending on whether the Defendant was adjudicated incompetent to proceed or not guilty by reason of insanity. *See* Colo.Rev.Stat. §§ 16–8–114.5(2); 16–8–115(1).

The issue of *Younger* abstention has previously been raised by the Defendants, and was considered and disposed of in *Neiberger v. Hawkins,* 70 F.Supp.2d 1177, 1183 (D.Colo. 1999). There, Defendants argued that both *Younger* and *Burford* abstention were appropriate. I stated:

Defendants have failed to persuade me to abstain from hearing this claim. They identify no overriding state interests or matters which traditionally look to state law for resolution. Further, Defendants do not claim that I would needlessly be interfering with state activities by hearing this claim. Finally, Plaintiffs argue, and Defendants do not contest, that this action, involving a potential Plaintiff class, does not involve the same parties or issues as cases under the continuing jurisdiction of numerous state committing courts.

*Id.* Defendants have shown no good reason to depart from the law of this case.

Defendants next argue that although Plaintiffs may have waived their doctor-patient privilege by filing suit, the same cannot be said for the class plaintiffs. Hence, the privacy rights of the class plaintiffs are jeopardized. Defendants' argument centers on the allegation that patient privacy has already been compromised through substantial press coverage of this case and Plaintiffs' discovery requests. However, privilege issues are limited because of the systemic, rather than individual, nature of the Plaintiffs' claims. Any further privilege issues can be addressed in the class notification, making clear that by remaining part of this class a plaintiffs' doctor-patient privilege will be waived.

Defendants next argue that certification is unnecessary, because if the Plaintiffs prevail the benefits will inure to all patients. *See Kansas Health Care Ass'n, Inc. v. Kan. Dept. of Social and Rehab. Servs.,* 31 F.3d 1536, 1548 (10th Cir.1994) ("This court has 'recognized the line of authority indicating that a class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs.'") (citing *Everhart v. Bowen,* 853 F.2d 1532, 1538–39 n. 6 (10th Cir.1988), *rev'd on other grounds,* 494 U.S. 83, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990); 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1785.2 (1986 & Supp.1994)).

Defendants' premise is mistaken. Plaintiffs seek system-wide declaratory and injunctive relief. However, should named Plaintiffs cycle out of the CMHI–P and be discharged, the ordered relief may become unenforceable. Although Plaintiffs could conceivably add intervenor plaintiffs to the suit, the continuation of the ordered relief should not depend on Plaintiffs finding patients willing to take up the suit.

I therefore conclude that class certification is appropriate, and certify the class as all adult patients who are now or in the future

will be involuntarily committed to the Institute of Forensic Psychiatry of the Colorado Mental Health Institute at Pueblo due to an adjudication of not guilty by reason of insanity.

## V. Conclusion

The following claims survive this Order:

(1) Claim one: violation of Colorado's Care and Treatment of the Mentally Ill Act:

 (a) by named Plaintiffs against all Defendants, except Mr. Toerber, for injunctive and declaratory relief, with no entitlement to damages; and

 (b) by class Plaintiffs against all Defendants, except Mr. Toerber, for injunctive and declaratory relief, with no entitlement to damages.

(2) Claim three: violation of the Due Process clause of the United States Constitution pursuant to 42 U.S.C. § 1983:

 (a) by named Plaintiffs against all Defendants for declaratory and injunctive relief;

 (b) by named Plaintiffs against Mr. Hawkins for damages in his individual capacity and for prospective injunctive relief in his official capacity;

 (c) by named Plaintiffs against Mr. Toerber for damages in his individual capacity incurred prior to February 28, 2001; and

 (d) by class Plaintiffs against all Defendants, except Mr. Toerber, for declaratory and injunctive relief only.

(3) Claim four: violation of § 504 of the Rehabilitation Act:

 (a) by named Plaintiffs against all Defendants, except Mr. Toerber, in their official capacities for declaratory and injunctive relief only; and

 (b) by class Plaintiffs against all Defendants, except Mr. Toerber, in their official capacities for declaratory and injunctive relief only.

Accordingly, IT IS ORDERED that:

(1) Plaintiffs' second claim for relief is DISMISSED;

(2) Defendant Hawkins, et al's motion to dismiss Plaintiffs' Third Amended Complaint is GRANTED IN PART as follows and DENIED in all other respects:

 (a) Plaintiffs' second claim for relief is DISMISSED;

 (b) Plaintiffs' fourth claim for relief is DISMISSED as against the Defendants in their individual capacities;

(3) Defendant Hawkins, et al's motion to dismiss Plaintiff Hall's second claim of the Third Amended Complaint is GRANTED;

(4) Defendant Hawkins, et al's motion to dismiss Plaintiff Snyders' second claim of the Third Amended Complaint is GRANTED;

(5) Defendant Hawkins, et al's motion to dismiss Plaintiff Glennie's second claim of the Third Amended Complaint is GRANTED;

(6) Defendant Hawkins, et al's motion to dismiss Plaintiff Eubank's second claim of the Third Amended Complaint is GRANTED;

(7) Defendant Hawkins, et al's motion to dismiss Plaintiffs' second claim for relief as to potential class members is GRANTED;

(8) Defendant Toerber's motion (1) under Rule 12(b)(1) to dismiss the state law tort claims made against him by the four New plaintiffs of Third Amended Complaint, and,

(9) under Rule 12(b)(6) to dismiss claims made against him for prospective injunction relief in Third Amended Complaint is GRANTED IN PART as follows and DENIED in all other respects:

 (a) Plaintiffs' second claim for relief is DISMISSED;

 (b) All claims for prospective injunctive relief against Defendant Toerber are DISMISSED;

 (c) All claims for monetary damages against Defendant Toerber are DISMISSED to the extent that the damages were incurred after February 28, 2001;

(10) Defendant Hawkins, et al's motion to stay discovery, except to decide the issue of sovereign immunity, is DENIED AS MOOT;

(11) Plaintiffs' motion to certify this case as a class action is GRANTED;

(12) This case is certified as a class action; and

(13) I certify the class as all adult patients who are now or in the future will be involuntarily committed to the Institute of Forensic Psychiatry ("IFP") of the Colorado Mental Health Institute at Pueblo ("CMHIP") due to an adjudication of not guilty by reason of insanity.

It is further ORDERED that the parties shall submit a joint form of class notice to the Court on or before June 14, 2002 that states the language both disputed and undisputed. Hearing on the class notice is set for Tuesday, July 2, 2002 at 3:00 p.m.